OTIS et al. v. PITTSBURGH-WESTMORELAND COAL CO.

(Circuit Court of Appeals, Third Circuit. February 6, 1915. On Petition for Rehearing, March 26, 1915.)

No. 1888.

1. TRIAL ⬠295—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

In an action for the breach of a contract for the sale of bonds, where the principal issue was whether the plaintiffs accepted their option to purchase, a statement in the charge that it does not appear that there was any written acceptance, and that there was no letter referring to an acceptance in terms, was not erroneous, as requiring the acceptance to be in writing, where the court in connection therewith stated that the method of accepting the option was not specified, and in such a case it might be accepted in any manner by which the minds of the parties might meet, with the understanding that the acceptance had taken place.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. ⬠295.]

2. APPEAL AND ERROR ⬠1064—HARMLESS ERROR—INSTRUCTIONS—IMMATERIAL ISSUE.

Where the main issue between the parties was whether or not plaintiffs had taken certain bonds of the defendant under their option contract, and thereby accepted the option, or whether the bonds were purchased under a separate contract, error in an instruction as to whether the bonds were those held by defendant at the time the option contract was made

---

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is harmless, since that would have no effect in determining whether they were delivered under the option or under a separate contract.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. ☞1064.]

On Petition for Rehearing.

3. TRIAL ☞242—INSTRUCTIONS—ISSUES—INCONSISTENT DEFENSES.

In an action for breach of contract to sell certain bonds to plaintiffs, where plaintiffs claimed that they had exercised their option to purchase the bonds by purchasing a part of them, and the defendants claimed that those bonds were sold under a separate contract and the option was never exercised, but if it was, the contract was terminated by plaintiffs' breach in failing to pay for those bonds according to the terms of the contract, a charge that the main question was whether the option was accepted, and if accepted, whether the failure to pay for the bonds in full was a material violation of its terms, was not objectionable as confusing before the jury two inconsistent grounds of defense.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 569–576; Dec. Dig. ☞242.]

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by Charles A. Otis and others, partners doing business under the name and style of Otis & Hough, now for use of Otis & Co., against the Pittsburgh-Westmoreland Coal Company. Judgment for the defendant, and plaintiffs bring error. Affirmed, and petition for rehearing dismissed.

See, also, 199 Fed. 86, 117 C. C. A. 598.

Arthur O. Fording, of Pittsburgh, Pa., for plaintiffs in error.
E. E. Robbins, of Greensburg, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The plaintiffs were bond brokers. The defendant was a coal operator. In a contract bearing date July 7, 1908, the defendant, in order to procure money needed in its business, made certain engagements for the sale of its bonds to the plaintiffs, and the plaintiffs undertook to resell and dispose of the same. Parts of the contract, and certain decided questions arising therefrom, that have relation to the matters now in controversy, appear in the opinion of this court reversing the judgment entered at the first trial of this case, and reported in 199 Fed. at page 86, 117 C. C. A. 598.

The contract makes two provisions for the delivery and sale of bonds. The first is an outright sale of $250,000 of bonds, to be delivered and paid for at the rate of $25,000 of bonds on the 1st day of each month following the date of the execution of the contract, with a stipulation that the plaintiffs might anticipate monthly deliveries by calling for and taking at one time any part or the whole of the bonds purchased, and thereupon be credited on their undertaking to the extent in which the transaction is anticipated. The second provision contemplates an option for the sale of $1,250,000 of bonds on commission, and contains similar requirements as to monthly and anticipated deliveries. This provision requires that the option, to be ef-

fective, must be accepted, and, if accepted, the contract completed thereby is terminated by the default of the plaintiffs in taking or paying for bonds in the amounts and at the periods agreed upon.

It is admitted that the parties performed all their undertakings with respect to the bonds purchased outright, but on April 8, 1909, before the tenth and last installment of purchased bonds had been delivered and paid for, the defendant delivered and the plaintiffs accepted for resale to a designated purchaser for a specified purpose, $100,000 of bonds, pursuant to negotiations theretofore had. These bonds were no part of those which were sold and purchased outright.

At the first trial of this case, the court excluded testimony offered by the plaintiffs to show that, by taking this $100,000 of bonds before the completion of the outright purchase, they had accepted or exercised the option contained in the contract, and held that the option to take the $1,250,000 option bonds could not be accepted or exercised until after the completion of the delivery and sale of the $250,000 purchased bonds. On writ of error, this court declined to give to the contract the restricted construction which its literal terms might warrant, and gave it a construction which the court found the parties themselves by their conduct had given it, and held that the plaintiffs obtained an option, which was established by the contract, that they could accept and exercise it before the termination of the period for the delivery of the bonds purchased outright, that the right to anticipate deliveries attached to the option bonds as well as to the purchased bonds, and that if anticipations were made, whether of one class or of the other, the requirement to take $25,000 of bonds monthly was suspended until such time as would have elapsed had the bonds been taken in regular monthly installments, instead of being taken in advance thereof.

When this court placed this construction upon the option clause of the contract, the question whether the sale of $100,000 of bonds of April 8, 1909, was an acceptance or was made in pursuance of an acceptance of the option by the plaintiffs, or was a transaction under another contract, became the central question in the controversy. The plaintiffs introduced testimony which had been excluded at the first trial, tending to prove that by the transaction of April 8th they had accepted the option granted them by the contract; and the defendants, on the other hand, introduced testimony tending to show that the transaction was the result of a separate negotiation, having for its object an altogether different matter from what was contemplated by the contract, that the transaction was entered into and completed under an agreement independent of and unrelated to the contract of July 7, 1908, and that therefore it was not an acceptance of the option.

This question was submitted to the jury, and to the manner of its submission the plaintiffs take exception. We are of opinion that the learned trial judge submitted the case upon a very clear statement of the law, and that while certain expressions in the charge, standing alone, might be open to the comment to which the plaintiffs have subjected them, nevertheless, when read in connection with their context, we find them unexceptionable.

[1] In his instructions upon the law, the learned judge properly stated to the jury that the "main question in the case is whether or not

the option was accepted by the plaintiffs," and in defining the burden which rested upon the plaintiffs to prove acceptance of the option upon which they were suing, he said, among other things, that "it does not appear that there was any written acceptance of the option, * * *" and elsewhere he stated that he did not recollect testimony of "any letter immediately following that transaction, or antedating it, in which reference is made in distinct terms to the fact that that [the $100,000 bond transaction] was an acceptance of the option." Stress is laid by the plaintiffs in error upon these two expressions, maintaining that in effect the jury was instructed that an acceptance of the option must have been by letter or by writing, and that the jury was thereby misled into the inference that, in the absence of testimony showing acceptance by letter or by other writing, the option was not accepted. As we read the part of the opinion from which the expressions excepted to are taken, it is clear to us that nothing in the statement of the judge would have warranted the jury in thinking that the right of the plaintiffs to recover depended upon evidence of a written acceptance of the option. Though allusion was made to the absence of a written acceptance, the allusion was merely preliminary to the statement made, and in substance repeated, that "the method of accepting the option is not provided for in the agreement." Instead of misleading the jury into a belief that a writing was necessary to an acceptance, the words of the judge in effect cautioned the jury that such was not the case, for in the absence of a method of acceptance provided for by the contract the court distinctly instructed the jury that "an option, where there is no provision as to the manner of its acceptance, may be accepted in any manner by which, or in pursuance of which, or at a time when the minds of both parties have met with the understanding that the acceptance has taken place," continuing with an appropriate instruction respecting the legal inference of an acceptance, deduced from the acts of the parties.

[2] The plaintiffs further urge that the learned trial judge, in charging the jury that the burden of proof was upon them, erroneously required them to show not only that they had taken the $100,000 of bonds, but also to show affirmatively that the bonds so taken were bonds that the defendant had held when the contract was made in July preceding. The court said:

"Now, while the contract does include all the bonds that the defendant had subject to its disposal at that time, yet there is no evidence in the case that the defendant did not have other bonds on April 8th, which may have been other than some of these option bonds, and it was not necessary that the same bonds of the same number be always preserved intact to meet the requirements, provided that other bonds of like tenor and amount of the same issue were available."

It is not entirely clear just what the learned judge meant by this language. Its importance, however, is wholly lost in the consideration of the main issue, which was, not whether the bonds sold on April 8th were a part of the bonds reserved for delivery under the option, if accepted, but whether the bonds then sold were sold under the option or under an entirely different contract.

Testimony that the bonds sold in the transaction of April 8th were bonds reserved to be delivered under the option, if accepted, or testimony that they were other bonds, or absence of testimony upon the point, has no bearing upon the question whether the bonds were sold under a contract completed by the acceptance of the option, or under another contract, for, had the bonds been in fact a part of the bonds reserved for the option, there is nothing in the contract of July 7, 1908, nor in the relation of the parties, which would have prevented them modifying the old contract or entering into a new one concerning the same bonds. Evidence of the character of the bonds would not have proved the character of the contract under which they were sold. This is made clear by the main question submitted in the charge, upon which the jury must have acted, without being disturbed by the expression of the learned judge excepted to.

Default in paying for bonds terminated the contract. By the transaction of April 8, 1909, the bonds purchased by the plaintiffs were sold by them to a creditor of the defendant, and by the creditor were accepted in substitution of the defendant's obligation of indebtedness. The difference between the amount of the defendant's indebtedness and the purchase price of the bonds was paid by the purchaser to the plaintiffs, and the same remitted by the plaintiffs to the defendant, less the sum of $500. It was claimed by the plaintiffs that this sum was chargeable to the defendant as its part of the expense in effecting the sale. This was denied by the defendant, and the jury was asked to decide, if they found the option accepted, whether in withholding the payment of this sum the plaintiffs had defaulted in a payment for bonds delivered and purchased, and thereby under its provisions had terminated the contract. On this question there was considerable controversy, which the plaintiffs in error have reviewed before this court, but with which we think we have nothing to do.

After a careful consideration of all matters assigned as error, we are very clearly of the opinion that in the proceedings and judgment below error was not committed.

The judgment below is affirmed.

## On Petition for Rehearing.

PER CURIAM. [3] In the petition for a rehearing of this case the plaintiffs in error suggest that the court inadvertently erred in overlooking (and approving) two points made by the defendant which were inconsistent with each other, namely, that the one hundred bonds were not taken under the option because of its nonacceptance, and that in withholding five hundred dollars of the proceeds of the sale of the same bonds the plaintiffs failed to make payment under the terms of the option, thereby indicating that this court affirmed the judgment upon two equally inconsistent grounds: "(1) As to the acceptance, because the bonds were not taken under the written contract; (2) as to termination, because they were." The suggestion of such confusion warrants a brief consideration.

As the issues of this case developed, it was clear that the plaintiffs based their right to recover upon the acceptance of an option, the de-

livery and receipt of one hundred bonds thereunder, and their subsequent performance of its terms. The defense was based upon a contention that the option was not accepted, that the one hundred bonds were delivered and sold pursuant to an altogether different contract, but if accepted the option contract was nevertheless terminated by the plaintiffs' default in making full payment for the bonds delivered and sold. The defendant claimed, and the plaintiffs admitted, that five hundred dollars of the proceeds of the sale of the bonds had not been paid to the defendant. In its charge upon this point the District Court, without the suggestion of confusion, said:

"The main question in the case, gentlemen, is whether or not this option was accepted; then if accepted, whether or not the retention of the $500 was a material violation of its terms."

In approving the submission, this court said:

"The jury was asked to decide, if they found the option accepted, whether in withholding the payment of this sum ($500) the plaintiffs had defaulted in payment for bonds delivered and purchased and thereby under its provisions had terminated the contract."

The verdict was entirely consistent with a finding by the jury that the option had been accepted and that the contract had been terminated by the plaintiffs' failure to pay for the bonds delivered thereunder.

The other points presented in the petition for a rehearing fail to impress us that this case was improperly submitted or reviewed. The petition, therefore, is dismissed.